UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
INSPIRED STUDIOS, INC.,                             :
                                                    :
                                  Plaintiff,        :          Docket No.
                                                    :
                  -against-                         :          **COMPLAINT**
                                                    :
CLEOPATRA RECORDS, INC.,                            :
                                                    :
                                  Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Inspired Studios, Inc., as and for its Complaint against defendant Cleopatra

Records, Inc., hereby alleges upon personal knowledge and upon information and belief:

## Background

1.       Plaintiff Inspired Studios, Inc. is a family-owned, independent record label, that

has been in the music business since the 1940s, when it began producing children's music

records on its Peter Pan Records label. Plaintiff believed in issuing recordings of popular music

for a low price to make music accessible to everyone.  Beginning in the 1960s, Plaintiff issued

low priced records by popular artists in all music genres for sale in drug stores, discount stores,

and record retailers with the motto, "Fine records need not be expensive."  In addition to

producing records for jazz, blues and popular music artists, Plaintiff produced children's records

for holidays such as Christmas-themed albums by The Caroleers and Halloween-themed albums

by Frankie Stein.  Plaintiff remains family owned and continues to produce and distribute music.

2.       Cleopatra Records, Inc. ("Cleopatra"), one of the largest suppliers of digital

recordings in the world, is a massive digital music piracy operation that is selling hundreds of

original music recordings produced and owned by Plaintiff without authorization.  Cleopatra's

business model is simple – pay nothing for rights and keep all of the proceeds.  Cleopatra

digitizes the genuine recordings and artwork on used vinyl albums, photoshops the original album cover to obliterate all reference to the original record label, and then sells the digitized albums as its own product in online music stores. Cleopatra and the online music stores then split the proceeds from each sale of Plaintiff's recordings and pay nothing to Plaintiff.

3.     Cleopatra goes to great lengths to avoid detection including operating under twenty different record label names, many of which do not appear on Cleopatra's own website. Cleopatra has no right to any of the hundreds of recordings or albums discussed herein, all of which were produced and are owned by Plaintiff.  Cleopatra was notified that it was infringing Plaintiff's rights four months ago as part of a separate lawsuit, but has continued its unlawful conduct, and in fact, expanded it.

## Nature of the Case

4.     This is an action for common law copyright infringement, false designation of origin and unfair competition under Section 43 of the Federal Trademark Act of 1946 (the "Lanham Act"), Trafficking in Counterefeit and Illicit Labels under 18 U.S.C. § 2518, violations of Florida' Deceptive and Unfair Trade Practice Act Florida Statute § 501.201 et. seq., and unjust enrichment, all arising from defendant's willful unauthorized reproduction, distribution, and sale of plaintiff's sound recordings in digital music stores.

## Jurisdiction

5.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question), § 1332 (diversity), the Lanham Act, 15 U.S.C. § 1125 and 18 U.S.C. § 2518.

6.     Personal jurisdiction over defendant is proper in this Court on the grounds that defendant Cleopatra transacts substantial and continuous and systematic business in the State of

2

Florida.  Cleopatra offers music for sale to Florida residents through its own interactive website and through various online music stores.  Accordingly, defendant Cleopatra conducts substantial business within the state, including the acquisition, distribution and sale of the infringing albums.

## Venue

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district and because Plaintiff maintains its principal place of business here.

## Parties

8.      Plaintiff is a New Jersey corporation with its principal place of business at 9920 Royal Cardigan Way, West Palm Beach, FL 33411. Plaintiff is the owner of the albums and recordings it originally produced and distributed under several record label imprints including, without limitation Diplomat, Promenade, Power, Pirouette, Ambassador, Guest Star and Peter Pan Records.

9.      Plaintiff was formerly known as Synthetic Plastics Record Corp.  In 1962, Synthetic Plastics Record Corp., changed its name to Ambassador Record Corporation.  In 1964, Ambassador Record Corp. was incorporated in New Jersey.  In 1966, Ambassador Record Corporation merged into Ambassador Record Corp.  In 1973, Ambassador Record Corp. changed its name to Peter Pan Industries ("P.P.I.").  In 1984, Synthetic Plastics Company merged into Peter Pan Industries ("P.P.I.").  In 1986, Parade Record Company, a New Jersey corporation, merged into Peter Pan Industries ("P.P.I.").  In 1992, Peter Pan Industries ("P.P.I.") changed its name to Peter Pan Industries, Inc.  In 2006, Peter Pan Industries, Inc. changed its name to Inspired Studios, Inc.

3

10.     Cleopatra Records, Inc. is a California corporation with its principal office located at 11041 Santa Monica Blvd., PMB #703, Los Angeles, California 90025.

## Cleopatra Is a Massive Digital Music Pirate

11.     According to its website, Cleopatra started in 1992 as a heavy metal re-issue record label that promoted "the Glam and Sleaze Rock scene".  Since that time, Cleopatra has developed a massive piracy operation in which it simply digitizes old records and sells unlimited copies of them in online music stores.

12.     Upon information and belief, Cleopatra is currently one of the single largest suppliers of digital recordings in the world as a result of its piracy operation.

13.     Upon information and belief, Cleopatra has reaped huge financial windfalls by employing its business model of selling unauthorized digital copies of used records in digital music stores.

## Cleopatra's Piracy Operation

14.     Cleopatra's business model is simple.  Cleopatra digitizes used vinyl records and then sells unlimited digital copies of the recordings in online music stores.

15.     For example, Cleopatra is selling used vinyl records on eBay that were produced by other prominent record labels in the 1950s and 1960s, and simultaneously, selling digital copies of the identical albums in online music stores, crediting itself (or its record label imprints) as the copyright owner.  It is plain that Cleopatra is simply selling the "source" copy of the digital album on eBay after it has copied all of the audio and image files from the vinyl.

16.     Reviewers of these digital albums comment that the digital recordings sound like they were carelessly ripped from vinyl records and that pops, skips and crackles associated with a worn vinyl record can be heard in digital recordings offered by Cleopatra. Exhibit 1 to this

Complaint consists of the catalog entries of digital albums being sold by Cleopatra in online music stores that are identical to vintage vinyl records being sold in Cleopatra's eBay store.

17.    Further, Cleopatra is selling entire albums that are identical to those offered for sale in the same online music stores by major labels (Universal, Warner, Sony) who actually own the recordings, except that the cover art of the digital albums offered by Cleopatra has been doctored to remove the identity of the original issuing record label. In each instance, Cleopatra's album is lower priced. Exhibit 2 to this Complaint is composed of examples of side-by-side comparisons of albums being sold by major labels with Cleopatra's pirated versions.

18.    Cleopatra has set no limit on what it will attempt to profit from, including the unauthorized sale of speeches written and delivered by Dr. Martin Luther King, Jr.  Exhibit 3.

<u>Cleopatra Is Pirating Plaintiff's Albums</u>

19.    In addition to pirating original albums produced by the major labels, Cleopatra has pirated 24 albums owned by Plaintiff (over 200 separate recordings), and has reproduced and distributed copies in digital music stores while fraudulently crediting itself as the record label and copyright owner.  Exhibit 4 identifies Plaintiff's original recordings that have been pirated by Cleopatra.  Images of Plaintiff's original vinyl albums that have been pirated by Cleopatra are annexed as Exhibit 5.  These albums include:

      (1) Jesse Crawford – Call Me Irresponsible/More  [Diplomat]

      (2) The Candymen Orchestra – Let's Twist  [Diplomat]

      (3) Frank Fontaine – Idiot's Delight  [Guest Star]

      (4) Frankie Stein and His Ghouls – Ghoul Music  [Power]

      (5) Frankie Stein and His Ghouls – Shock! Terror! Fear!  [Power]

      (6) Frankie Stein and His Ghouls – Monster Melodies  [Power]

(7) Frankie Stein and His Ghouls – Monster Sounds & Dance Music  [Power]

(8) Frankie Stein and His Ghouls – *Weerdo Wolf/Goon River*  [Power]

(9) Jonnie Aluani & His Orchestra – Hawaiian Interlude  [Pirouette]

(10) The Ray Bloch Singers – Hits of '66 [Ambassador]

(11) The Ray Bloch Singers – Hits of '67 [Ambassador]

(12) Johnny Sea – Crown Prince of Country Music  [Guest Star]

(13) Lightnin' Hopkins – Live at the Bird Lounge  [Guest Star]

(14) Sweet Toothers – Those Were The Days  [Diplomat]

(15) Vincent Lopez Trio – Come Saturday Morning  [Ambassador]

(16) Space Cadets – Dixieland Jazz  [Promenade]

(17) Ripple Blast Singers – Rhythm and Blues Hits of 1967  [Power]

(18) The Caroleers – Santa Claus is Coming to Town  [Diplomat]

(19) The Caroleers – 'Twas the Night Before Christmas  [Diplomat]

(20) The Caroleer Singers & Orchestra – Santa Claus Is Coming To Town: Children's Christmas Favorites  [Diplomat]

(21) The Peppermint Kandy Kids – Snoopy's Christmas [Peter Pan Records]

(22) Stradivari Strings – The Sound of Gershwin in Ping Pong Percussion [Pirouette]

(23) Al Goodman & The Pirouette Orchestra – Christmas Sing-A-Long  [Pirouette]

(24) Dan & Dale – Play Movie Hits  [Diplomat]

20.     The documents annexed as Exhibit 6 are PDF images of Plaintiff's albums that Cleopatra has offered for sale in online music stores.

21.     As evident from the images annexed as Exhibit 6 and included below, Cleopatra has engaged in "reverse passing off," or, selling Plaintiff's albums as if each was an original Cleopatra product.

22.     Specifically, each of the albums enumerated above originated with and is owned by Plaintiff. Cleopatra digitized Plaintiff's original album cover artwork to make these products appear genuine.  Cleopatra has altered Plaintiff's original album cover artwork, however, to conceal the true origin of these recordings by removing Plaintiff's original record label name from the album cover.  Cleopatra then credits itself (or one of its label imprints) as the record label and copyright owner for Plantiff's album in the online music store.

23.     For example, the following are side-by-side comparisons of the artwork from three original albums produced and originally released by Plaintiff with pirated copies offered for sale by Cleopatra:

Original Diplomat Release:                    Cleopatra (Master Classics) pirated release:




Original Pirouette Release:                   Cleopatra (Vintage Masters) pirated release:




Original Diplomat Release:                    Cleopatra (Stardust) pirated release:

     

24.     The albums depicted in Exhibit 6 are unauthorized digitized copies of albums originally produced and released by Plaintiff. In each instance, Cleopatra has digitized the original album artwork, removed Plaintiff's record label from the artwork, and falsely credited its own imprints as the record label and copyright owner of the album in the digital music stores.

25.     In one case, Cleopatra has combined 38 of Plaintiff's Frankie Stein recordings (originally relased on the albums enumerated as 4, 5, 6, 7 and 8 above) into one digital album – Halloween Ghoul Classics – that Cleopatra sells for $5.99.  Cleopatra is able to sell large numbers of recordings for low prices because Cleopatra has made no investment in producing the recordings and has no costs other than digitizing the original vinyl record.  It is of no concern to Cleopatra how many copies of Plantiff's albums it actually sells because Cleopatra bears no financial risk; Cleopatra has not invested or otherwise paid for the creation of any of Plaintiff's albums or otherwise paid a negotiated fee to Plaintiff for the necessary rights.  Cleopatra has simply misappropriated Plaintiff's recordings and sold them as its own.

26.     Cleopatra's removal of Plaintiff's record label names and logos from the album artwork is likely to deceive, confuse and mislead purchasers and prospective purchasers that

Plaintiff's albums as sold by Cleopatra are either owned by Cleopatra, or co-branded by, authorized, or otherwise licensed by Plaintiff, which they are not.

27.    Cleopatra's false designation of origin and false description has caused and is likely to cause confusion, mistake or deception as to the origin of Plaintiff's albums and as to an affiliation, connection or association between Cleopatra and Plaintiff, and as to the sponsorship or approval of Cleopatra's products by Plaintiff.

28.    Cleopatra's conduct deprives Plaintiff, the originator of the products, of the advertising value of its name and goodwill that would stem from public knowledge of the true source of the products.  The public and ultimate purchasers of these products are also deprived of knowing the true source of the products and are deceived into believing that they come from a different source.

29.    The likelihood of confusion, mistake and deception engendered by Cleopatra's removal of Plaintiff's record label names from the albums and selling them under fraudulent names is causing irreparable harm to the goodwill symbolized by Plaintiff's record labels and the reputation they embody. Cleopatra's activities have taken Plaintiff's reputation out of its control so that any failure of Cleopatra to maintain adequate standards in the offering Plaintiff's recordings for sale will reflect adversely on Plaintiff and cause Plaintiff further irreparable harm. For example, Cleopatra's pirated releases have already drawn many negative reviews from consumers such as one below and other examples provided in Exhibit 7.

**Most Helpful Customer Reviews**

9 of 10 people found the following review helpful

⭐☆☆☆☆   **CRAPPY BOOTLEG JUNK**   October 1, 2011

By C. Dyer

Format: MP3 Music

***BUYER BEWARE*** I only bought one song and I feel ripped off. Clearly someone not an actual record label is "recording" old 45's that are dirty and warped. Stay far, far, far, far away from anything put out by Master Classics. ***BUYER BEWARE***

<u>Cleopatra Is Distributing Plaintiff's Recordings on Other Albums</u>

30.     In addition to the wholesale pirating of entire albums owned by Plaintiff,

Cleopatra has reproduced individual recordings from Plaintiff's albums on themed compilation

albums without authorization.  Cleopatra has falsely credited its imprints such as Shakedown

Records, Stereo Magic Records, Soundtrack Classics, Magic Holiday Records, and Holiday

Classic Records, as the source of these recordings.  Cleopatra does not advertise or mention most

of these record labels on its own website, thereby making it increasingly difficult to identify

Cleopatra as the infringer of its albums.  Exhibit 8.

31.     Exhibit 9 details seventy instances in which Cleopatra has reproduced, without

authorization, one of Plaintiff's recordings on themed compilation albums (i.e., Halloween

songs, Christmas songs) that are comprised of additional recordings not owned by Plaintiff.

32.     In each of these seventy instances, Cleopatra has offered Plaintiff's recording for

sale as an individual download and falsely credited itself as the record label and copyright owner

of the individual recording.  This conduct constitutes reverse passing off as it confuses and

deceives the public as to the origin of the recordings and/or Plaintiff's approval, connection with

or association with Cleopatra and deprives Plaintiff of the goodwill of its name and value of

advertising its name as the source of these products.

<u>Cleopatra Is Unlawfully Distributing Plaintiff's Recordings as Physical Products</u>

33.     Cleopatra is, without authorization, selling counterfeit copies of Plaintiff's

recordings as compact discs that are manufactured and shipped through U.S. mail at the time the

album is purchased ("manufactured on demand compact disc").  Exhibt 10 includes a PDF image

of Plaintiff's album <u>Dixieland Jazz</u> by Space Cadets offered for sale by Cleopatra as a

manufactured on demand compact disc.

34.     In addition, Exhibit 10 includes PDF images of catalog entries showing Cleopatra selling Plaintiff's recordings on two different manufacture on demand compact discs. Specifically, Cleopatra is selling *Who's Afraid of Weerdo Wolf?* and *Chained* by Frankie Stein on the compilation, Halloween Freakout Classics, and Plaintiff's recording *When the Saints Go Marching In* by The Space Cadets on the compilation, 30 Greatest Vintage Children's Songs.

Cleopatra is Trafficking in Counterfeit and Illicit Labels

35.     Cleopatra is also knowingly trafficking in counterfeit labels ("images") that are essential to its marketing of Plaintiff's recordings. The counterfeit images identify Plaintiff's recordings, accompany the recordings in digital music stores and appear genuine.  This is evident in consumer reviews of Cleopatra's unauthorized copies of Plaintiff's albums, such as those included in Exhibit 11, that reference "this LP" (referring to the genuine "Long Playing" vinyl record produced by Plaintiff).  An example of a typical review is reproduced below:



36.     The counterfeit images also accompany the recordings when downloaded on a consumer's hard drive when they are purchased.  The images and recordings are enclosed in a

single digital file container ("digital container") that is delivered to the consumer's hard drive and coded to identify different data elements within the single computer file, such as audio and image files.

37.     The digital container is a counterfeit label that identifies  the counterfeit and infringing images and audio files contained therein.  The image file in the digital container allows the consumer to identify Plaintiff's recordings in that container.  The images reproduced below are included in a consumer's Amazon digital music library after purchasing four of Plaintiff's albums as sold by Cleopatra:



38.     The image file in each digital container identifies Plaintiff's recordings that are also in the digital container.  In the example above, the third image identifies that it contains the following recordings owned by Plaintiff:



39.     In addition, the images are illicit labels because they are a labeling component used by Plaintiff to verify that a copy of the album is authorized.  Plaintiff intended that the

images only be distributed in connection with authorized copies of its recordings. Cleopatra distributed these images with its unauthorized copies of Plaintiff's recordings to online music stores.

Cleopatra is Infringing Plaintiff's Copyrights

40.     Plaintiff first fixed each of the recordings and albums described above and listed in Exhibit 4 prior to February 15, 1972.  Plaintiff is the owner of the common law copyright that exists in each of the albums and recordings.

41.     Plaintiff never licensed or authorized Cleopatra to reproduce, distribute or sell any of the albums or recordings discussed herein.

42.     Cleopatra willfully pirated all of Plaintiff's recordings albums listed in Exhibit 4 and reproduced, distributed and sold them without license or authorization from Plaintiff.

43.     Plaintiff never received any notice that Cleopatra was reproducing, distributing, performing and selling its albums and recordings and keeping all of the proceeds for itself.

44.     Plaintiff has never received any money in connection with Cleopatra's pirated reproductions, distributions and sale, and offers to sell Plaintiff's albums and recordings.

45.     Cleopatra has misappropriated Plaintiff's albums and recordings, obliterated Plaintiff's record label name and credited itself as the copyright owner and record label to deceive consumers concerning the true source of Plaintiff's albums and recordings.

46.     Cleopatra is experienced in the music industry and knew that it was infringing the rights of others when it reproduced and distributed Plaintiff's albums, as its own, for its own commercial benefit.

47.     Cleopatra willfully pirated, reproduced and distributed all of Plaintiff's albums in online music stores within the last three years and is continuing to do so.

13

48.     In December 2013, Plaintiff's President, Donald Kasen, submitted a sworn declaration as part of a subpoena issued in the Central District of California in an unrelated lawsuit stating that Cleopatra was infringing fourteen of Plaintiff's albums.

49.     Despite the sworn declaration from Mr. Kasen, Cleopatra has willfully continued to commercially exploit Plaintiff's albums and recordings.

50.     Cleopatra continues to willfully and intentionally reproduce and distribute each of the Plaintiff's albums and recordings discussed herein with knowledge that it has no authority from Plaintiff to do so.

Cleopatra's Conduct is Malicious

51.     Cleopatra knowingly duplicated, distributed and sold Plaintiff's recordings without authorization.

52.     Cleopatra knowingly obliterated Plaintiff's record labels from the album covers and credited itself as the copyright owner.

53.     Cleopatra knowingly employed a dozen different record label names to create the appearance of many separate pirates infringing Plaintiff's albums and recordings.

54.     In fact, seven of the record label names Cleopatra credited as the record label and copyright owner of Plaintiff's albums and recordings do not appear on Cleopatra's own website.

**First Cause of Action**
(Copyright Infringement)

55.     Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

56.     Plaintiff owns a common law copyright in each of the recordings on the albums listed in Exhibit 4 that protects the recordings themselves, whether it is the master recording or a copy.

14

57.   Cleopatra reproduced, distributed, performed and sold each of the recordings listed in Exhibit 4 without authorization from Plaintiff.

58.   In addition, Cleopatra separately reproduced, distributed, performed and sold each of the recordings listed in Exhibit 9 without authorization from Plaintiff.

59.   Cleopatra's conduct has at all times been knowing and willful.

60.   As a proximate result of defendant Cleopatra's wrongful conduct, Plaintiff has been irreparably harmed, suffered damage, and defendant Cleopatra has profited in an amount to be determined at trial.

### Second Cause of Action
(Unfair Competition, Reverse Passing Off, 15 U.S.C. § 1125(a))

61.   Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

62.   Cleopatra's actions described above constitute false designation of origin and unfair competition with respect to Plaintiff, which actions are likely to cause confusion, to cause mistake, and/or to deceive as to the affiliation, connection, and association of Cleopatra with Plaintiff, in violation of 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

63.   Cleopatra's wrongful conduct has been willful or knowing.

64.   As a proximate result of Cleopatra's wrongful conduct, Plaintiff has suffered and been irreparably harmed, and has also suffered damage in an amount to be determined at trial.

### Third Cause of Action
(Trafficking in Counterfeit and/or Illicit Labels – 18 U.S.C. § 2318(e))

65.   Plaintiff repeats and realleges the allegation set forth above as though set forth fully herein.

15

66.     For each of the albums in Exhibit 6, defendant Cleopatra knowingly trafficked in a counterfeit and/or illicit label that was affixed to, enclosing, or accompanying, or designed to be affixed to, enclose or accompany a phonorecord of Plaintiff's album in violation of 18 U.S.C. § 2318(e).

67.     Cleopatra used a facililty of interstate commerce in the commission of the offense.

68.     As a proximate result of Cleopatra's wrongful conduct, Plaintiff has been irreparably harmed, and has also suffered damage in an amount to be determined at trial.

**Fourth Cause of Action**
(Violation of the Florida Deceptive and Unfair Trade Practices Act)

69.     Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

70.     Section 501.201 of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

71.     Section 501.202 of the FDUPTA states this law shall be liberally construed "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

72.     Sections 501.211 of the FDUPTA provides "anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part."

16

73.     Plaintiff has an intangible property interest in its professional investment of time, skill, and money in its albums and recordings.  This property interest is protectable under state law against unfair competition, appropriation and larceny.

74.     Cleopatra, by its acts alleged and described herein, has committed a violation of Section 501.201 of the FDUPTA.

75.     Section 501.211 of the FDUPTA provides that "[i]n any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs."

76.     As a proximate result of Cleopatra's wrongful conduct, Plaintiff has suffered a loss as result of Cleopatra's violation of the FDUPTA and Cleopatra is liable to Plaintiff for actual damages, attorney's fees and court costs in an amount to be determined at trial.

**Fifth Cause of Action**
(Common Law Unfair Competiton)

77.     Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

78.     Plaintiff expended time, labor and money in making the albums and recordings copied by defendant Cleopatra.

79.     Cleopatra directly copied, distributed and sold albums and recordings produced by Plaintiff which Plaintiff is either presently selling or seeking to sell in the future.

80.     The damage to Plaintiff from defendant Cleopatra's activities is irreparable and cannot be adequately measured or compensated by monetary damages.

**Sixth Cause of Action**
(Common Law Conversion)

81.     Plaintiff repeats and realleges the allegations set forth above as though set forth

17

fully herein.

82.    Plaintiff has an intangible property interest in the time, effort and expense of producing the albums and recordings at issue in this Complaint.

83.    Plaintiff has a common law copyright in the albums and recordings at issue in this Complaint.

84.    Plaintiff's recordings are a part of Plaintiff's existing business venture and Defendant Cleopatra sold these recordings for profit.

85.    Cleopatra is guilty of a wrongful taking of intangible interests in a business venture.

### Seventh Cause of Action
(Punitive Damages, Florida Statute  § 768.22)

86.    Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

87.    Cleopatra is personally guilty of intentional misconduct or gross negligence.

88.    Cleopatra had actual knowledge of the wrongfulness of the conduct described herein and the high probability that injury or damage to Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

89.    Cleopatra's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of persons exposed to such conduct.

90.    Cleopatra and its principals actively and knowingly participated in the conduct described herein.

91.    The officers, directors, or managers of Cleopatra  knowingly condoned, ratified, or consented to such conduct.

92.    Cleopatra engaged in conduct that constituted gross negligence and that

contributed to the loss, damages, or injury suffered by Plaintiff.

93.     As a proximate result of Cleopatra's wrongful conduct, Cleopatra is liable to Plaintiff for punitive damages in an amount to be determined at trial and sufficient to punish, deter and make an example of Cleopatra.

### Eighth Cause of Action
(Unjust Enrichment)

94.     Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

95.     Defendant Cleopatra has received something of value from Plaintiff, consisting of the misappropriation of unlimited digitized copies of Plaintiff's products and the financial receipts from each sale and exploitation of Plaintiff's albums and recordings.

96.     Plaintiff has not received any compensation for the value of the right to sell the Plaintiff's albums and recordings or the actual sales and exploitation of digitized copies of Plaintiff's albums and recordings by defendant Cleopatra.

97.     Defendant Cleopatra has profited from and been enriched by the distribution and sale of the Plaintiff's albums and recordings.

98.     Defendant Cleopatra has been unjustly enriched.

99.     As a proximate result of defendant Cleopatra's wrongful conduct, Plaintiff has been irreparably harmed, and has also suffered damage in an amount to be determined at trial.

### Ninth Cause of Action
(Unfair Deceptive Practice Acts or Similar Statutes in each
State where Defendant has Violated Plaintiff's Rights)

100.    Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

101.    Cleopatra has willfully engaged in deceptive acts and/or unfair practices in the reproduction, distribution, sale and offering for sale, Plaintiff's albums and recordings.

102.    Upon information and belief, Cleopatra has engaged in this behavior in several states in the United States.

103.    Plaintiff is entitled to allege each and every state's deceptive act statute or similar statutes against defendant Cleopatra once additional information is learned through discovery.

104.    As a proximate result of defendant Cleopatra's wrongful conduct, Plaintiff has been irreparably harmed, and has also suffered damage in an amount to be determined at trial.

### Tenth Cause of Action
(Permanent Injunction)

105.    Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

106.    Plaintiff has a likelihood of eventual success in this litigation.

107.    Plaintiff will suffer irreparable harm if injunctive relief is not granted by this Court.

108.    Defendant Cleopatra's blatant reproduction and distribution of Plaintiff's albums and recordings is causing irreparable harm to Plaintiff.

**<u>Demand for Jury Trial</u>**

      109.    Plaintiff respectfully requests a trial by jury on all claims asserted in this

Complaint.

      WHEREFORE, Plaintiff Inspired Studios, Inc. respectfully requests that judgment be

entered against defendant Cleopatra Records, Inc., as follows:

A.  For judgment that defendant Cleopatra has infringed Plaintiff's common law
copyrights in Plaintiff's recordings, that defendant Cleopatra violated the Lanham
Act, 18 U.S.C. § 2318, the FDUPTA, and the relevant statutes of other states, that all
such violations have been willful, that defendant Cleopatra has tortiously interfered
with Plaintiff's rights, has engaged in unfair competition, conversion, and has been
unjustly enriched, all in violation of Florida common law;

B.  For judgment entering a preliminary and permanent injunction enjoining and
restraining defendant Cleopatra and its officers, agents, servants, employees and
attorneys and all those in active concert or participation with Cleopatra, from: (1)
infringing Plaintiff's exclusive rights under the Florida common law by reproducing,
distributing, marketing, peforming or selling Plaintiff's recordings in Florida; (2)
falsely designating Plaintiff's albums and recordings as the copyright and products of
its own labels; and (3) trafficking in counterfeit and/or illicit labels.

C.  For  judgment assessing defendant Cleopatra for the damages suffered by Plaintiff,
including an award of actual damages, including defendant Cleopatra's profits, under
the Lanham Act, FDUPTA Section 501.211, as well as costs and attorney's fees to
the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117,
FDUPTA Section 501.211; an award of actual damages and profits, attorneys' fees,
costs and statutory damages under 18 U.S.C. § 2318, and compensatory and punitive
damages to the full extent available under the common law and punitive damages
pursuant to Florida Statute § 768.22, in an amount to be determined at trial; and

D.  For a judgment directing that defendant Cleopatra deliver up for destruction to
Plaintiff all copies of Plaintiff's albums and recordings in its possession or under their
control;

E.  For judgment granting such other, further, and different relief as to the Court may
seem just and proper, including Plaintiff's costs and reasonable attorneys' fees.

Dated: Miami, Florida
       May 12, 2014

Respectfully submitted,

_____

Justin Leto
Florida Bar ID # 652776
jleto@letolaw.com
201 South Biscayne Boulevard, #1720,
Miami, FL 33131
(305) 577-8448
Attorneys for Plaintiff


As Local Counsel to:


Brian Levenson *(pro hac vice motion will be filed once a case number has been assigned)*
Schwartz & Ponterio, PLLC
134 West 29th Street, Suite 1006
New York, NY 10001
(212) 714-1200
Attorneys for Plaintiff